UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONISHA HARRIS,
O/B/O L.G., a Minor

    Plaintiff,                Civil Action No. 17-14125

v.                               HON. TERRANCE G. BERG
                                  U.S. District Judge
                                  HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL     U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Monisha Harris ("Plaintiff") brings this action on behalf of her minor daughter L.G. ("Claimant") under 42 U.S.C. § 405(g), challenging Defendant Commissioner's finding that Claimant was no longer eligible for Childhood Supplemental Security Income under Title XVI of the Social Security Act as of June 6, 2013. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #17] be GRANTED to the extent that the case be remanded under the fourth sentence of § 405(g) for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #19] be DENIED.

## PROCEDURAL HISTORY

On November 3, 2006, Claimant was found to be entitled to Childhood Disability Benefits as of her birth on June 29, 2006 (Tr. 9). On June 5, 2013, the SSA found that Claimant was no longer disabled as of June 6, 2013 (Tr. 9). After the initial denial of reconsideration, Plaintiff, acting on behalf of Claimant, requested an administrative hearing, held on July 8, 2016 in Oak Park, Michigan (Tr. 38). Administrative Law Judge ("ALJ") Virginia Herring presided (Tr. 38). Plaintiff and Claimant , unrepresented, testified (Tr. 43-50, 51-74, 75-94). On November 23, 2016, ALJ Herring found that Claimant's disability ceased as of June 6, 2013 (Tr. 9-25). On October 26, 2017, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on December 21, 2017.

## BACKGROUND FACTS

Claimant, born June 29, 2006, was just short of her seventh birthday at the time the disability was found to have ended (Tr. 9, 25). At the time of the November 3, 2006 disability determination, otherwise referred to as the Comparison Point Decision ("CPD"), Claimant was found to experience "low birth weight and Vater Syndrome[1] with multiple

---

[1] Vater syndrome is defined as "a group of birth defects that often happen together." www.healthline.com/health/vater-syndrome. (Last visited February 10, 2019). "Each letter stands for a part of the body affected: vertebrae (spinal bones), anus, tracheoesophageal (trachea and esophagus) [and] renal (kidney). *Id.*

congenital anomalies, including anal stenosis" (Tr. 12). The anomalies also include one kidney and spinal malformations.

### A. Plaintiff's Testimony

Plaintiff (Claimant's mother) offered the following testimony:

Aside from the physical problems, Claimant experienced a learning disability and had been placed in special education at school (Tr. 43). Claimant needed material explained repeatedly (Tr. 44). Plaintiff noted that Claimant's earlier grade school education had been stymied by being "in and out of the hospital" (Tr. 45).

### B. Claimant's Testimony

Claimant was 10 at the time of the hearing (Tr. 51). She lived in a house with her mother, sisters, and brother (Tr. 52). She helped take care of her five-month-old brother (Tr. 54). She spent her free time watching television and going swimming (Tr. 54). Her favorite toy was a ballerina (Tr. 56). She occasionally argued with her sisters (Tr. 56). She saw her friends at school (Tr. 57-58). She like school "a little," noting that she only liked "reading time" (Tr. 58). She received two A's, three C's, and one B on her last report card (Tr. 58). She missed some school due to doctors' appointments and her need to stay home when her mother was at work (Tr. 59). She enjoyed school field trips and family trips (Tr. 60).

Claimant was able to feed and dress herself (Tr. 61). Her chores included washing the dishes and doing the laundry (Tr. 62). She took medicine with food to help her "go to the bathroom," but noted that the medicine "really hurt[]" her stomach (Tr. 63). She

experienced accidents "sometimes a lot" but "not lately" (Tr. 64). She experienced accidents both at school and at home (Tr. 64).

Claimant enjoyed reading Disney books (Tr. 68). She enjoyed dancing but did not take dancing lessons (Tr. 69-70). She enjoyed gym and did not experience problems running, jumping, or playing (Tr. 70). She attended a once-weekly gymnastics class but experienced back pain (Tr. 71). She liked cheerleading but was sometimes limited by stomach pain (Tr. 71). She denied needing extra bathroom time but admitted that she sometimes required her mother or father's help to "get clean" (Tr. 73). She asked to be sent home from school around once a week due to stomach aches (Tr. 73).

### C. Plaintiff's Additional Testimony

Following Claimant's testimony, Plaintiff resumed her testimony (Tr. 75). She stated that in fact, Claimant's teacher kept "standby clothes" available for Claimant due to "plenty of times" Claimant experienced an accident (Tr. 75). Plaintiff stated that Claimant required "wipes" to stay clean and required extra time in the bathroom (Tr. 75). Claimant experienced an accident the previous weekend at which time Claimant was unaware of the accident until it was pointed out to her (Tr. 83). Plaintiff estimated that Claimant had experienced accidents at least 15 times in the previous month (Tr. 85). Plaintiff provided Claimant with panty liners and adult diapers for regular use (Tr. 84). Claimant enjoyed gymnastics but was mostly forced to stay on the sidelines and watch her sisters participate (Tr. 76).

Plaintiff believed that Claimant was becoming "immune" to laxatives and stool relaxers and experienced chronic constipation (Tr. 76, 78). Claimant's long-term treating physician had recommended the continued use of laxative and high fiber foods (Tr. 76). Claimant had undergone surgery for the repair of the sphincter and was now self conscious if not traumatized about undergoing examinations (Tr. 77).

In addition to the digestive problems, Claimant had undergone back surgery and continued to experience back pain in humid weather (Tr. 78). Claimant reported back pain while bending (Tr. 79). Plaintiff did not trust Claimant to cook yet but allowed her to make sandwiches (Tr. 80). Claimant required help from others to wash herself (Tr. 80). Prior to the current year of school, Claimant had failed her classes "two years in a row" (Tr. 80). As part of an Individualized Education Program ("IEP") Claimant was given truncated assignments (Tr. 81). She experienced problems remembering directions (Tr. 82).

Plaintiff noted that Claimant "walked differently" due to back problems and that a doctor had recommended physical therapy (Tr. 87). Plaintiff noted that her two younger daughters had less trouble retaining information than Claimant (Tr. 88). Plaintiff was more reluctant to have Claimant participate in sports because she had only one kidney (Tr. 89). Plaintiff noted that Claimant and her siblings were often late to school because Claimant took longer to get ready (Tr. 89). Claimant's problems also affected Plaintiff's work schedule (Tr. 89-91).

### D. Medical and Academic Evidence

### 1. Treating and Academic Sources

Claimant's birth records note only one kidney (Tr. 286, 289). Doppler studies at the age of four days showed a ventricular septal defect (Tr. 279). At the age of four weeks, Claimant underwent a posterior anal transplant (Tr. 313). Imaging studies of the lumbar spine taken the same month were consistent with spina bifida (Tr. 350). A September, 2006 MRI of the spine showed possible congenital bony abnormalities of the lumbar and thoracic spine (Tr. 297). Records from the next month by Bassam Dahman, M.D. state that Plaintiff was doing well one month after surgery (Tr. 323). The same month, a colostomy was performed was performed to address an infection brought about by the birth defect of an anterior ectopic anus (Tr. 298, 334).

March, 2012 records by Marcus DeGraw, M.D. note that claimant's health had been "somewhat problematic" due to anal fistula and a single kidney (Tr. 366). He noted that Claimant's main issue was constipation (Tr. 366). The following month, he noted that Claimant had been scheduled for a laminectomy for tethered cord release (Tr. 367, 377, 421). Imaging of the abdomen from the same month show that the abdomen was extended due to constipation (Tr. 395). Dr. Degraw's July, 2012 post-laminectomy records note good results from surgery (Tr. 368).

January, 2013 records by Dr. Dahman state that Claimant was uncooperative with an attempted rectal examination (Tr. 374). The same month, he opined that Claimant needed

to leave the classroom for bathroom breaks "immediately after she has the urge to defecate" and that she would be expected to have "several bowel movements a day" (Tr. 379). He found that she should be allowed to remain in the bathroom "as long as she needs to finish defecation and [to] clean herself" (Tr. 379). In an undated letter accompanied by January, 2013 treating records, Dr. Degraw stated that due to Claimant's health problems, she required "significant intervention daily" due to "many chronic medical problems" including frequent, unplanned "bathroom usage" leading to tardiness and absences, and that other conditions would be expected to cause "recurrent and ongoing complications" (Tr. 380). He opined that Claimant's medical issues would never "resolve due to the permanent nature of her original medical disorders" (Tr. 380).

Also in January, 2013, Claimant's first grade teacher Christine Zuazo found mostly "very serious" deficiencies in the domain of "Acquiring and Using Information," noting that Claimant was a year behind when entering first grade and fell behind further due to excessive "absences and tardies" (Tr. 218). In "Attending and Completing Tasks," Zuazo found very serious deficiencies in a majority of areas due to the inability to pay attention in class (Tr. 219). In "Interacting and Relating to Others," Zuazo found very serious difficulty in making friends and in communication (Tr. 220). She found no limitation in "Moving About and Manipulating Objects," or "Caring for Yourself," (Tr. 221-222). In "Health and Physical Well-Being," Zuazo noted that while Clamant took asthma treatments at home, she did not exhibit breathing problems at school (Tr. 223).

In March, 2013, a rectal examination by Dr. Dahman was unremarkable (Tr. 382). Dr. Dahman recommended the continued use of stool softeners (Tr. 382, 401). A February, 2015 gastrointestinal study showed evidence of constipation (Tr. 467). Marc Cullen, M.D. noted that Plaintiff was non-compliant with recommendations to administer laxatives consistently and as a result, "Claimant had "virtual daily encopresis" causing social embarrassment at school (Tr. 461). Dr. Cullen noted that the current condition was "a potentially serious problems" (Tr. 461). He noted that x-rays showed severe constipation (Tr. 461). Records from April, 2015 note the report by Claimant's aunt that Claimant was "able to get to the bathroom most of the time without leaking but had "leaking" intermittently (Tr. 463). January, 2016 records by Natalie Kontos, D.O. note Claimant's continued report of abdominal pain and intermittent hard and soft bowels (Tr. 472). Treating records note that Claimant used a nebulizer for environmental allergies (Tr. 471). Dr. Kontos composed an undated letter on Claimant's behalf, noting "long-term chronic medical conditions" with expected "recurren[ce] and ongoing complications" (Tr. 446). She noted that Claimant required "significant interventions daily" given "many chronic medical problems" and the need for "unplanned" bathroom usage (Tr. 446).

School records from the 2015-2016 school year show that Claimant required improvement in reading, science, and writing (Tr. 267). February, 2016 IEP records note the need for "speech and language services" and help in mathematics (Tr. 477, 482). Claimant's reading comprehension skills fell into the lowest one percentile (Tr. 477). March, 2016

treating records note renal problems, asthma, and chronic constipation (Tr. 470).

### 2. Non-Treating Sources

In June, 2013, child psychologist Terry Rudolph, Ph.D. performed a consultative examination on behalf of the SSA, noting that Claimant had a normal gait and posture (Tr. 385). She reported that she was responsible for cleaning her room and making her bed (Tr. 386). Claimant did not know the day of the week, date, month, or the year (Tr. 386). Intelligence testing showed a full scale IQ of 85 (low average) with moderate impairment in educational functioning (Tr. 388).

In September, 2013, Muhammad Ahmed, M.D. performed a non-examining assessment of the treating and consultative records on behalf of the SSA, finding less than marked deficiencies in "Acquiring and Using Information," and no limitation in "Attending and Completing Tasks;" "Interacting and Relating to Others;" "Moving About and Manipulating Objects;" or "Caring for Yourself," (Tr. 442-443). In "Health and Physical Well-Being," Dr. Ahmed found less than marked deficiencies (Tr. 443).

### E. The ALJ's Decision

Citing the medical transcript, ALJ Herring found that at the time of the CPD, Claimant had the medically determinable impairments of "low birth weight and Vater Syndrome with multiple congenital anomalies, including anal stenosis" but that none of the conditions medically equaled any listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 since June 6, 2013 (Tr. 12-13).

The ALJ found that in the domain of "Acquiring and Using Information," Claimant had "less than marked limitation" (Tr. 14, 24). The ALJ found that Claimant's "academic issues" were attributable to absenteeism "more [] than an inability to synthesize information" (Tr. 14). In the domain of "Attending and Completing Tasks," the ALJ again found less than marked limitation, noting that while Claimant had been "distracted by her abdominal issues," she [] had no behavioral issues while attending summer school" (Tr. 15, 24). In the domain of "Interacting and Relating to Others," the ALJ found that Claimant had no limitation, citing Plaintiff's testimony that Claimant was able to get along with others (Tr. 16, 24). The ALJ found no limitation in the domain of "Moving About and Manipulating Objects," noting that "no allegations of limitation" had been made in that domain (Tr. 17). The ALJ found "no limitation" in "Caring for Yourself," stating that Plaintiff reported that Claimant had not had an accident in the three weeks before the hearing (Tr. 18).

Finally, the ALJ found "less than marked" limitations in the domain of "Health and Physical Well-Being," noting that while Claimant had undergone several surgeries since birth, she was able "to adequately mange her symptoms so she is able to participate in many activities" (Tr. 19).

The ALJ concluded that "[s]ince June 6, 2013," Plaintiff had the severe impairments of "vertebral anomalies; ventricular septal of the heart; genesis of kidney and dureteropelvic junction obstruction status post colostomy reversal and rectocutaneous fistular repair; status post surgical correction of tethered spinal cord; [and] chronic constipation with urgent bowel

issues" but found that none of the conditions met or medically equaled or "functionally" equaled" "one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19-20).

The ALJ noted that a rectal examination conducted just prior to the cessation of disability was "completely normal" (Tr. 21). She cited Dr. Cullen's finding that Claimant and her mother were "the most noncompliant of patients I have" (Tr. 21). She cited June, 2016 treating records noting that Claimant's diet was high in fast food, sugar, and dairy with insufficient intake of fruits and vegetables (Tr. 22). She accorded only "some weight" to the findings by Drs. DeGraw and Kontos, noting that the opinions did not include an assessment of Claimant's functional abilities (Tr. 22). The ALJ also accorded Dr. Dahman's opinion that Claimant would need to leave the classroom up to four times a day for extended periods "some weight," stating that Plaintiff had testified that Claimant had an accident "about one time per month, requiring [Plaintiff's] assistance to bring clothing to the school" (Tr. 22). She cited Dr. Rudolph's finding that Plaintiff had a full-scale IQ of 85 indicating "low average" intelligence (Tr. 22). The ALJ accorded "little weight" to first grade teacher Zuazo's opinion of disabling limitations on the basis that they were not "supported by the testimony or the overall weight of the record" (Tr. 23).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

**A. Childhood Benefits**

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental

impairment which results in marked and severe functional limitations."[2] In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

    (i) Acquiring and using information;

    (ii) Attending and completing tasks;

    (iii) Interacting and relating with others;

    (iv) Moving about and manipulating objects;

    (v) Caring for yourself; and,

    (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. §

---

[2]Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. § 416.926a(e)(3).

### B. Continuing Eligibility For Childhood Benefits

Following a disability determination, the disabled child is subject to periodic review of her/her ongoing entitlement to benefits. 42 U.S.C. § 1382c(a)(3)(H)(ii)(I); 20 C.F.R. § 416.994a(a). At Step One of the sequential analysis, the Commissioner determines whether there has been any "medical improvement" in condition since the determination, also known as the "Comparison Point Decision ("CPD"), that she was disabled. § 416.994a(b). "Medical improvement" is defined as is "any decrease in the medical severity" of the child's impairments. § 416.994a(c). Determination of whether there has been a medical improvement must be based on "symptoms, signs, or laboratory findings" pertaining to the impairments. *Id.* If there has been no medical improvement, the disability continues. §416.994a(b)(1). If a medical improvement has occurred, the analysis continues. §416.994a(b)(2).

A Step Two, the Commissioner determines whether the impairment forming the basis of the disability finding functionally equals the Listings. § 416.994a (b)(2). If the impairment still functionally equals listing impairment, the disability continues. *Id.* If the impairment does not functionally equal a listed impairment, the Commissioner proceeds to Step Three. *Id.* At Step Three, the Commissioner determines whether the child's *current*

condition is disabling, consistent with the analysis set forth in 42 U.S.C. § 1382c (a)(3)(C)(I) above.  § 416.994a(b)(3).  At Step Three, the Commissioner determines whether the child suffers from a severe impairment or combination of impairments; whether the impairment(s) meets or medically equals the severity of any listed impairment; and, whether the impairments functionally equal a listed impairment.  § 416 .994a(b)(3) (i)-(iii).

## ANALYSIS

Plaintiff makes three main arguments in favor of remand, contending first that the ALJ erred by declining to credit the disability opinions by multiple treating sources. *Plaintiff's Brief,* 8-11, *Docket #17,* Pg ID 570.  Second, she argues that the ALJ failed to consider all of Claimant's symptoms in finding that she did not functionally equal a listed impairment.  *Id.* at 11-13.  Finally, she contends that the ALJ erred in finding less than marked limitation in the domain of Health and Physical Well-Being.  *Id.* at 14-17.

As a threshold matter, I note significant support for a finding of continued disability. While evidence pointing to a disability finding is of no import provided that substantial evidence otherwise supports the non-disability determination, *see Sherrill,* 757 F.2d at 804, an ALJ's determination cannot be based on misstatements of the record.  *See Sleight v. Commissioner of Social Sec.*, 896 F.Supp.2d 622, 635 (E.D.Mich. 2012)(remand for further fact-finding appropriate where "ALJ's factual misstatement" of the record formed the basis of erroneous findings).

In finding that Claimant had "no limitation" in the domain of Caring for Yourself, the

ALJ stated that Plaintiff testified that Claimant had not had a bathroom accident in the three-week period before the July 8, 2016 hearing (Tr. 18). The ALJ later stated that Plaintiff testified that Claimant "had an accident about one time per month" (Tr. 22). In fact, Plaintiff testified that Claimant had experienced an accident five days before the hearing and in the previous month, had approximately *15* accidents (Tr. 83-85). Plaintiff also testified that Claimant required help from others to wash herself (Tr. 80, 84). Claimant herself testified that she required help cleaning herself after an accident (Tr. 73).

Plaintiff's testimony that her daughter had frequent accidents and required adult intervention is strongly supported by the treating records. In January, 2013, Dr. Dahman noted that Claimant would be expected to have "several bowel movements a day" and would be required to leave the classroom at unpredicted intervals for lengthy periods (Tr. 379). In an undated letter accompanying his January, 2013 treating, records, Dr. DeGraw found that Claimant required "significant" daily intervention, adding that the "frequent, unplanned "bathroom usage" would lead to tardiness and absences (Tr. 380). The same month, Claimant's first grade teacher noted that Claimant's school career had been compromised by excessive "absences and tardies" (Tr. 218). Dr. Kontos noted that Claimant required "significant interventions daily" for "chronic conditions" including the need for "unplanned" bathroom usage (Tr. 446). The March, 2015 records by Dr. Cullen noting "virtual daily encopresis" also strongly support the conclusion that the digestive condition caused ongoing, significant disruptions (Tr. 461).

The ALJ's erroneous belief that Plaintiff's testimony supported the non-disability finding undermines in the domains of Caring for Yourself and Health and Physical Well-Being. A finding in the domain of Caring for Yourself includes consideration of "independence and competence to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age." § 416.926a(k)(1)(ii). A child of Claimant's age (between the ages of six and 12) "should be independent in most day-to-day activities (*e.g.*, dressing yourself, bathing yourself). §416.926a(k)(2)(iv). Claimant's lack of independence in toileting and bathing, as evidenced by both Plaintiff's testimony and multiple treating source opinions, undermines the ALJ's finding of no limitation in this domain.

The ALJ's misstatement also affects her finding that Claimant experienced less than marked limitation in the domain of Health and Physical Well-Being (Tr. 19). In this domain, the Commissioner will determine if a "physical or mental disorder . . . may make it difficult for you to perform your activities independently or effectively." § 416.926a(l)(1). Possible conditions include "generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain." *Id.* Plaintiff's testimony, supported by numerous treating records, indicates that Claimant's bowel incontinence caused and would continue to cause significant disruptions in her school progress. *See Lay ex rel. J.P. v. Colvin*, 2014 WL 340143, at *4 (E.D.Wash. July 30, 2014)(remand appropriate for further

consideration of layman source opinion of "extreme" impairment in domain of Health and Physical Well-Being supported by records showing "chronic constipation, urinary incontinence, soiling at school," and the need for diapers as late as first grade).

A corrected review and statement of Plaintiff's testimony, coupled with reconsideration of the treating findings, could result in a finding of marked limitation in the domains of Caring for Yourself and Health and Physical Well-Being, or extreme limitation in Health and Physical Well-Being. *See Lay,* at \*5. As noted above, either marked limitation in two domains or extreme limitation in one domain would direct a finding of disability. § 416.926a(b)(1). As such, a remand is required for further proceedings is required. For the same reasons, upon remand, the ALJ should reconsider whether Claimant's impairments functionally equal a listed impairment. The ALJ should also re-weigh the limited weight previously accorded the treating source opinions, given that Plaintiff's testimony actually supports rather than undermines their finding of significant, ongoing limitations.

Finally, because grounds exist for further proceedings based on the transcript previously considered by the ALJ, I recommend that upon remand, consideration also be given to the December, 2016 MRI (revealing significant, additional abnormalities) and January, 2017 treating records noting the need for additional surgery and longstanding treatment (Tr. 33-35). *Huber v. Commissioner of Social Security*, 2009 WL 111738, \*11 (E.D. Mich. January 15, 2009)(claimant not barred from presenting new material upon remand for further proceedings under the fourth sentence of § 405(g)); *Faucher v. Secretary*

*of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994)(same).

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Docket #17] be GRANTED to the extent that the case be remanded under the fourth sentence of § 405(g) for administrative proceedings, and that Defendant's Motion for Summary Judgment [Docket #19] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 13, 2019

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 13, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen